# CHARLESTON.

SECURITY REALTY INVESTMENT COMPANY v. LEWIS, HUBBARD
& COMPANY *et als.*

Submitted March 9, 1920.   Decided March 16, 1920.

1. CORPORATIONS—*In Suit of Pledgee of Corporate Stock Against a Subsequent Pledgee in Possession of Certificate, Equity May Adjudicate the Rights of the Parties and Decree a Sale and Distribution.*

   There is jurisdiction in equity at the suit of a pledgee of the shares of stock in a corporation against a subsequent pledgee thereof in possession of the certificate therefor to settle and adjudicate the rights of the parties and to decree a sale and distribution of the proceeds thereof.   (p. 14).

2. APPEAL AND ERROR—*Finding of Fact on Conflicting Oral Evidence Preponderating in Favor of Appellee Not Disturbed.*

   This court will not disturb the decree of a circuit court and the findings of facts therein depending on conflicting oral evidence plainly preponderating in favor of appellee, not overcome by documentary evidence calling for reversal.   (p. 14).

Appeal from Circuit Court, Kanawha County.

Bill by the Security Realty Investment Company against Lewis, Hubbard & Company and others.   Decree for plaintiff, and Lewis, Hubbard & Company, appeals.

*Affirmed.*

*Payne, Minor & Bouchelle,* for appellant.

*McClintic, Matthews & Campbell,* and *Dolle, Taylor, O'Donnell & Geisler,* for appellee.

MILLER, JUDGE:

Upon a bill filed by the Security Realty Investment Company, assignee of the George Wiedemann Brewing Company, against the appellant Lewis, Hubbard & Company and others, and upon the issues made by the demurrers and answers thereto, and by the depositions and proofs taken and filed in the cause, the court below, by the decree complained of, adjudged in favor of the plaintiff company, that it had right and priority to the

202 shares of the capital stock of the West Virginia Clay Products Company, a corporation, represented by certificate No. 101, issued to and in the name of C. E. West, and of which certificate the appellant had acquired possession through the said West, it is claimed, but which West and the plaintiff company denied, as collateral security for a debt which West owed it.

There is no denial of the fact alleged, that in December 1908 West by endorsement on the certificates of stock with power of attorney to make transfer and by delivery assigned and transferred to the George Wiedeman Brewing Company his shares in the Mountain Park Land & Development Company as collateral security for a debt which he then owed and continues to owe that company or the plaintiff, its assignee, agreed between the parties at the time of the decree to amount to at least the sum of $29,000.00; and it is shown that the receipt which West took from the brewing company upon delivery of these certificates of stock specifically stipulates that they should be held in trust and surrendered to said C. E. West, either upon the payment of their face value or the substitution therefor of the stock of a company then contemplated and being organized to succeed the Mountain Park Land & Development Company. The bill alleges furthermore as a fact, not denied, that the West Virginia Clay Products Company was the company referred to in said stipulation, and that when organized it took over the property of the Mountain Park Land & Development Company, and that upon its organization, there was issued to said West 302 shares, representative of his holdings in the original company.

The present controversy as shown by pleadings and proofs originated with a transaction between the defendant West and the defendant C. C. Lewis, Jr., the latter representing the defendant Lewis, Hubbard & Company, on January 21, 1910. On that day Lewis, learning through West or otherwise, that West was entitled to the 302 shares of the stock of the West Virginia Clay Products Company, but with notice, as West swears, of the prior claim or right of the George Weidemann Brewing Company, procured from West an order directed to Sam P. Jones, Esq., of Louisville, Ky., saying: "Dear Sir:—When my stock in the West Virginia Clay Products Company has

been released, please send it to Mr. C. C. Lewis, Jr., Charleston, W. Va., for me and oblige." Some time after procuring this order Lewis forwarded it to Jones, and about December 8, 1910, received from Jones or some representative of the West Virginia Clay Products Company certificate No. 23 for 302 shares of the stock of that company, issued in the name of West, and on December 8th, Lewis wrote West informing him of this fact and saying: "Kindly call and let us discuss the matter." Lewis is not certain, but gives it as his impression or recollection that shortly after the date of his letter of December 8th, West called and endorsed an assignment on the back of the certificate with power of attorney to transfer the stock on the books of the company. West denies this; he denies that he ever endorsed the stock to Lewis for the purpose of assigning it to him or his company as collateral security or any other purpose, except that when subsequently, about October 1912, when it became necessary to re-finance the company through one Caldwell and to return the shares to Caldwell or to the company for that purpose, he then endorsed the certificate, which for some time had been in the hands of Lewis, for the purpose of surrendering or exchanging it for a new certificate, No. 101 for 202 shares. This new certificate for 202 shares, the immediate subject of the present controversy, appears to have been sent by the company or by some officer or representative thereof to said Lewis, and to have been subsequently endorsed by West, and to have thereafter remained in the hands of Lewis or Lewis, Hubbard & Company until the filing of the present bill.

One of the principal points made upon the pleadings and proofs was whether or not Lewis had notice through West or otherwise of the prior rights of the George Weidemann Brewing Company before obtaining possession of the original certificate for 302 shares of stock, as stated. Upon this question Lewis was uncertain, although it was his impression or his best recollection that West had endorsed the certificate before notice to him of the brewing company's rights. West is positive in his statement that he notified Lewis of the rights of the brewing company when giving him said order; and the pleadings and proofs show that about February 11, 1911, a representative of the brewing company in company with West called upon

Lewis and demanded of him the certificate for the 302 shares, and then notified him of the claim and right of the brewing company thereto; and as corroborating both of them, they rely on the language of the order given Lewis by West for the stock, in which there is no intimation that the stock had been assigned by West to Lewis, and also upon the letter of Lewis to West, of December 8, 1910, already referred to, in which Lewis makes no claim to the stock based upon the theory that it had been assigned to him or his company as security for a debt; and they moreover rely upon certain admissions which they swear Lewis made in February 1911, denied by him, to the effect that he had no doubt West thought all he had to do was to call at his (Lewis') office and get the certificate. Of this interview in February 1911, the representative of the brewing company kept a memorandum in writing, to which he referred to refresh his recollection as to what had taken place, and both he and West swear that at that time they saw the certificate and that it was not then endorsed or assigned by West. West swears in explanation of his order to Lewis that he was indebted to Lewis in a large sum of money, and Lewis desired to see the stock as a means of strengthening his faith in West's ability finally to pay his debts: and Lewis admits that West expected and therein expressed faith in his ability to pay Lewis out of the proceeds of the sale of some coal property which West then owned.

Upon this state of the pleadings and proofs the court decreed that plaintiff had a valid equitable lien to secure the indebtedness of West to it, on the 202 shares of the capital stock of the West Virginia Clay Products Company, valid in all respects and paramount to any right of Lewis, Hubbard & Company thereto; and thereon also found and adjudged as facts; first, that defendant West did not originally cause said stock to be deposited with Lewis, Hubbard & Company as a pledge to secure his indebtedness to that company; second, that at the time the original order was given to Lewis for said 302 shares and when later West endorsed the certificate for 202 shares, defendant Lewis, Hubbard & Company had notice of the prior claim and equitable lien of George Wiedemann Brewing Company to said stock, and therefore was not a bona fide purchaser thereof with-

out notice as against the plaintiff, but took said stock subject to and subordinate to the plaintiff's lien thereon; and the court decreed the rights of appellant in accordance with these findings of fact.

Appellant and Lewis, by demurrers to the bill, challenged the right of plaintiff to relief in equity. We think there can be no question as to the sufficiency of the bill on demurrer. The earliest common-law rule seems to have required a bill for foreclosure in such cases, even when the pledgee was in possession. Jones on Collateral Securities, (3rd ed.), § 640. That equity has jurisdiction to settle the controversy between the parties where the pledge is not in possession, but the subject of the pledge is in the hands of some third person, or junior claimant or lienor, seems to be well settled by the authorities. Jones, *supra*, § 641. In the case at bar appellant is in possession of the pledged stock, claiming a superior right. On this state of facts right to relief in equity is sustained by many authorities. *Page* v. *Boggess*, 83 N. Y. Supp. 569; *Michigan State Bank* v. *Gardner et al.*, 3 Gray 305; *Scott* v. *Brame et al.*, 118 Va. 194; 31 Cyc, 841, 842, and cases cited in notes; 18 C. J. 1004, §§ 33, 34.

The other three assignments of error involve alike and depend upon the question whether the findings of fact by the circuit court are supported by the evidence. As already observed, there is no controversy as to the fact that the shares of West in the Mountain Park Land & Development Company were regularly and properly signed and pledged by him to the George Wiedemann Brewing Company; nor can there be any question that as between it and the pledgor, it was entitled to the 302 shares of stock issued to West by the West Virginia Clay Products Company and delivered to Lewis. But counsel for appellant contend that the pledgee thereof not having had the original shares of West in the Mountain Park Land & Development Company transferred to it on the books, and the West Virginia Clay Products Company having issued directly to West a new certificate for 302 shares of the stock of that company, which West caused to be sent to Lewis as stated, Lewis took for appellant good and paramount title to these latter shares. Our statute, section 37 of Chapter 53 of the Code, in so far as the

original shares in the development company are concerned, at least gave good title to the pledgee thereof upon the delivery to it of the certificate therefor with power of attorney authorizing transfer thereof on the books of the company, so far at least as it was necessary to effect a sale or pledge of said shares, in the language of the statute, "not only as between the parties themselves, but also as against the creditors of, and subsequent purchaser from the former." See also, 4 Thompson on Corporations, §§ 4202, 4203, and cases cited.

But respecting the 302 shares of West in the West Virginia Clay Products Company, it is contended that Lewis for appellant acquired superior title thereto as pledgee thereof for want of notice of the prior rights of the brewing company. This proposition is fully met by the decree and findings of the court below, that prior to his acquisition thereof Lewis had notice of the superior rights of the brewing company; that West had never in fact assigned or delivered the 302 shares to appellant or Lewis for it, as collateral for any debt which West owed to that company. As to the 202 shares immediately involved, the court found that at the time West may have endorsed said certificate No. 101 for the 202 shares, Lewis and appellant through him had actual notice of the claim and right of plaintiff or its predecessor in title. We have already indicated our opinion that the court was fully justified by the evidence in the findings of fact. And observing the general rule many times followed by this court, we must decline to disturb these findings of the circuit court. We can only reverse for errors apparent, which do not appear in the record presented.

Our conclusion is to affirm the decree.

*Affirmed.*